Miller *v.* The Mayor &c. of New York.

GEO. G. BARNARD, J. dissented.

[NEW YORK GENERAL TERM, January 4, 1869. *Clerke, Sutherland* and *Geo. G. Barnard,* Justices.]

———————•●•———————

MILLER AND COATES *vs.* THE MAYOR &c. OF THE CITY OF NEW YORK.

Upon a sale of lots belonging to the defendants, by the commissioners of the sinking fund, in April, 1852, the terms of sale were—ten per cent to be paid in cash, with expenses of the sale, immediately; fifteen per cent to be paid on the 1st of May, 1852, when the deed was to be delivered; and the remaining seventy-five per cent to be secured by bond and mortgage for five years. K. & B. purchased twelve of the lots, at said sale, upon the above terms, and paid ten per cent of the purchase money and expenses of sale, but failed to pay the fifteen per cent, and execute a mortgage for the remainder of the purchase money, on the 1st of May. On the 16th of December, 1852, they assigned their bid to the plaintiffs, and the comptroller of the city promised that, upon payment of the fifteen per cent, and the execution of a mortgage for the balance by the plaintiffs, the property would be conveyed to them.

*Held* that the defendants were bound by this arrangement between the plaintiffs and the comptroller; and that by such arrangement the default of K. & B. in not paying the fifteen per cent on the 1st of May, and giving their bond and mortgage for the remainder of the purchase money, was *waived* by the defendants.

And the plaintiffs having, in reliance upon this arrangement, paid to K. & B. the ten per cent and the auctioneer's fees; *Held* that they were entitled to a specific performance of the contract of sale.

*Held, also,* that a delay which subsequently took place, until August, 1858, when the plaintiffs tendered the amount of purchase money due, with inter-

est, having occurred by mutual consent of the plaintiffs and the comptroller, from time to time, without any fault of the plaintiffs, the defendants were bound by the action of the comptroller, in the matter of postponing the delivery of the deed; and that the statute of limitations did not commence running against the plaintiffs until the refusal of the comptroller to deliver the deed, in August, 1858.

APPEAL from a judgment entered upon the report of a referee.

The defendants, the corporation of New York, sold upwards of 500 lots in April, 1852, at public auction, among these the lots involved in this suit. These lots, twelve in number, were bought by King & Brush, in the name of Brush. Ten per cent of the purchase money was paid on the day of sale by the purchaser, pursuant to the terms of sale, at the office of the comptroller, to the collector of the city revenue, who under the direction of the comptroller gave a written receipt and memorandum in writing, signed by him as such collector, describing the property, and stating the consideration of the purchase, and the party purchasing. No deed was prepared by the defendants, and the purchase had not been completed up to December following, when the purchaser proposed to assign his bid to the plaintiffs. The plaintiffs met him at the comptroller's office, and the comptroller, in behalf of the corporation, assented to the sale and assignment of the bid, stating that ten per cent had been paid by Mr. Brush, and that if the plaintiffs purchased his said bid they would be accepted in his place, and the deed would be made out to the plaintiffs. They thereupon paid Brush the ten per cent, and the auctioneer's fees, and the comptroller directed the deed to be made out to them, the plaintiffs' names being by the comptroller's directions substituted in the books of the corporation as the purchasers. The deed was thereupon prepared and executed by the defendants, under the direction of the comptroller, and was approved by the then counsel to the corporation, Henry E. Davies.

The plaintiffs having been directed to call in a few days for the deed, did so, and by mutual consent the completion of the purchase was postponed. A new comptroller came in, and the comptroller's office was moved. In moving, the books had been disarranged, and the entry of ten per cent could not be found. The plaintiffs called to complete the purchase, and the comptroller requested them to wait until the entry could be found, and they did so. The plaintiffs called frequently; they were desirous of getting their deed, but the entry was not found in the comptroller's book until 1858. The property, meanwhile, had been taxed to the plaintiffs, and they paid the taxes for three years. This delay having taken place at request of the comptroller, until the time of the mortgage had expired, the plaintiffs desired still to leave part of the purchase money on bond and mortgage. The comptroller expressed himself as favorable to this, but doubting his authority to take a mortgage, took the matter into consideration and finally referred it to the commissioners of the sinking fund, who took action in the matter which was not communicated to the plaintiffs until August, in that year, when the then comptroller, Mr. Flagg, refused to deliver the deed. The plaintiffs immediately made a tender of the full amount of the purchase money and interest, and demanded the deed, which was then executed and in the comptroller's hands. The matter was followed up by the plaintiffs, who applied by mandamus to compel the delivery of the deed. This was refused, the plaintiff having a remedy by suit; and in July, 1864, within six years from the refusal, this action was brought to compel specific performance by a conveyance of the property. On the trial, the defendants' counsel moved to dismiss the complaint upon the following grounds, viz:

*First.* The evidence fails to establish any cause of action against the defendants. No claim or right of action can

Miller *v.* The Mayor &c. of New York.

be based upon any agreement upon the part of the comptroller to extend the time of performance.

*Second.* There was no tender of performance at any time, nor could there have been, by reason of the omission of King & Brush to pay the balance of the purchase money. (or to give the mortgages required by terms of sale.) The only tender alleged to have been made by the plaintiffs occurred on the 11th August, 1858, more than six years after the day upon which King & Brush were to perform (May 1, 1852.) The plaintiffs are barred by the statute of limitations, even admitting that the tender was a good one. This action, as appears from the records, was not commenced until twelve years after the sale, namely, August 3, 1864. Even if the statute of limitations is not a bar, time was of the essence of the original contract, and a court of equity will not decree specific performance in favor of the party in default, who has omitted to do what he had contracted to do.

*Third.* But even if this is not so, the court will refuse its equitable aid or interference when the lapse of time and when the delay has been so great as to constitute laches disentitling the parties to its aid, and evidencing an abandonment of the contract, irrespective of any peculiar stipulation as to time.

*Fourth.* It would be hard and unjust to enforce specific performance.

*Fifth.* The fact that the plaintiffs gratuitously paid taxes upon the property to which they had no pretense of title, and which taxes were imposed by the sovereign power of the state, through the board of supervisors of the county, will not be considered as an estoppel on the part of these defendants, a municipal corporation, no party thereto.

The referee denied said motion, and the defendants' counsel excepted.

The referee found the facts in favor of the plaintiffs, that the delay was by mutual consent, and not the fault

of the plaintiffs, and a decree was entered for specific performance by the defendants.

From this judgment or decree the defendants appealed.

*Rich'd O'Gorman,* for the appellants. I. The motion to dismiss the complaint should have been granted. 1. The only contract, express or implied, between Messrs. King & Brush and the defendants, was that upon the payment of fifteen per cent of the purchase price on the first day of May, 1852, and the execution and delivery of a bond and mortgage for the remainder, a conveyance of the premises should be delivered. King & Brush failed and neglected to pay the fifteen per cent, or to make the bond and mortgage, although it appears that the deed was drawn, executed, and ready to be delivered. It is an elementary rule that he who would enforce specific performance of an agreement must either show complete performance, or due tender of performance on his part, having the ability to perform. By their failure to perform, King & Brush were in default, and incompetent to enforce specific performance, and their assignment to the plaintiffs confers no greater rights than they possessed. 2. No right of action can be based upon any alleged agreement subsequently (in December, 1852) made with the plaintiff, to waive the default of Messrs. King & Brush, and further extend indefinitely the time for the payment of the fifteen per cent. Such an agreement on the part of the comptroller amounts to a resale of the premises to the plaintiffs, and is entirely "*ultra vires*" and void. (*Fry on Specific Performance,* 216, *note* 1.) It was beyond his power to extend the time for completing the transaction, and his promise, therefore, cannot bind the corporation. (*People* v. *Stout,* 23 *Barb.* 349. *Altemus* v. *The Mayor,* 6 *Duer,* 446. *McSpedon* v. *The Mayor,* 15 *How.* 462. *Brady* v. *The Mayor,* 2 *Bosw.* 173. *Farmers' Loan and Trust Co.* v. *The Mayor,* 4 *id.* 80. 27 *How.* 44.) 3. *There was no tender of performance at any*

*time.* A tender of money, but not of the mortgages required by the terms of sale, is alleged to have been made on the fifteenth of August, 1858, more than six years after the day upon which King & Brush were to perform (May 1, 1852.) 4. The time of performance is of the *essence* of the contract, arising under the terms of sale. "The time is originally of the essence of the contract, *in the view of a court of equity,* whenever it appears to have been part of the real intention of the parties that it should be so, and not to have been inserted as a merely formal part of the contract." (*Fry on Specific Performance, p.* 413. *Hipwell* v. *Knight,* 1 *Younge and Collyer, Ex.* 415. *Reed* v. *Chambers,* 6 *Gill & J.* 490. *Wells* v. *Smith,* 2 *Edwards' Ch. Rep.* 78, *aff'd. 1 Paige,* 22.) A part of the stipulation was that security for payment should be given within a specified time, and the regular payment of interest thus assured; against the failure to perform this act the plaintiff will not be relieved. (*Doar* v. *Gibbs,* 1 *Bailey's Ch. R.* 371.) 5. Even if time was not originally of the essence of the contract, the long continued neglect of the plaintiffs and their assignors, to attempt or offer performance, constitutes *laches* which disentitles them to the aid of the court. (*Fry on Specific Performance, p.* 412, *sections* 708, 709, 711, *and note* 3, *p.* 415; *also section* 732, *p.* 423, *and section* 741. *Lloyd* v. *Collett,* 4 *Bro. C. C.* 469. *Benedict* v. *Lynch,* 1 *John. Ch. Rep.* 370. 4 *Sandf.* 374, 426. *McWilliams* v. *Long,* 32 *Barb.* 194.) 6. To enforce specific performance would be harsh and unjust. (*Fry on Specific Performance, p.* 181, *sec.* 251.) 7. The statute of limitations is a bar to the maintenance of the action. The cause of action for the specific performance of a contract to convey land, accrues whenever the plaintiff could have filed a bill for the relief sought; an equitable action for specific performance will lie without any demand before the suit; demand before suit brought is important only in respect to the costs in the action, and has no bearing upon the rights of

the parties. The statute of limitations against such an action, therefore, runs without reference to demand. (*Bruce* v. *Tilson*, 25 *N. Y. Rep.* 194.) It follows that the alleged cause of action accrued May 1, 1852, twelve years before the action was commenced. It also appears that, " in the latter part of 1854," upon the plaintiffs applying for a conveyance of the property, they were informed by Mr. Cady, the comptroller's representative, that he " did not feel willing to close the business"—*i. e.*, he declined to deliver the deed—and from that time the plaintiffs are chargeable with notice that their right was denied.

II. The testimony that the property was assessed in the name of the plaintiffs, and taxes paid by them, was incompetent, and exception thereto properly taken. The taxes are laid, not by the defendants or their officers, but by independent officers, exercising functions conferred by various statutes, who are not controlled by the defendants. No estoppel therefore can arise from their acts.

*H. H. Anderson,* for the respondents. I. The fact of sale is admitted, and no reason appears in the case, or has been suggested, which a court of equity can regard, why the sale made by the defendants should be set aside; for such would be the effect of a decision in favor of the defendants. The sale was regularly made at auction; it is not pretended that the price was inadequate, nor that there was any fraud in the transaction, but the contrary affirmatively appears. The ten per cent required by the terms of sale, and the auctioneer's fees, were duly paid, and the money so paid was deposited in the city treasury. Fifteen per cent was payable on the first day of May thereafter, when the deeds were to be ready for delivery. It appears from the evidence that the deeds for this property were not ready then, as Mr. Lawrence, the clerk to the comptroller, produced the only deed which was prepared, and this was made to the plaintiffs, after the pur-

chase bid was assigned to them, with the consent of the comptroller, and this deed was acknowledged December 17th. It bears the approval of the counsel to the corporation, Henry E. Davies, and this approval is abundant evidence that neither the purchaser nor the plaintiffs were then considered in default. No charge of default can be made against the purchaser by reason of the non-payment of the fifteen per cent on the first of May, as the deed was not then ready for delivery, and had not been made out, and it is evident that time was not made the essence of the contract. No suggestion to that effect was ever made by the defendants, and the finding of the referee that the delay in completion of the purchase was by mutual consent of the plaintiffs and defendants, is abundantly sustained by the proofs, and will not be disturbed by this court.

It is always sufficient, even for a party who has been guilty of laches, to show that his laches have arisen from a reasonable cause, or have been acquiesced in by the other party. But no laches are chargeable when, as in this case, mutual consent is shown. (*Williston* v. *Williston,* 41 *Barb.* 635. *Waters* v. *Travis,* 9 *Johns.* 450, 466. *Viele* v. *Troy and Boston R. R. Co.,* 21 *Barb.* 381. *D'Arras* v. *Keyser,* 26 *Penn.* 249.)

II. The objection that the action was not commenced within six years after cause arose is untenable. The finding of the referee is that the time for performance of the contract was extended by mutual consent until August, 1858. Then, for the first time, is a refusal by either party hinted at. It appears from the proof, that from that time the plaintiffs were engaged in endeavoring to secure their rights without resort to suit, but suit was commenced in July, 1864, within six years from the time when a cause of action arose by the refusal of the comptroller to deliver the deed. Until then the parties had been negotiating together, both recognizing their mutual obligation to each other.

III. The defendants sustain no injury from a decree of specific performance, while the refusal to perform would work an injury to the plaintiffs, and this is a sufficient reason in equity to sustain the decree. Interest is paid the defendants, and they suffer no wrong or hardship, as they receive full compensation for the delay. The plaintiffs paid their money in good faith, the property was regarded as sold, so much so that taxes were assessed upon these lots, as they are not on corporation property, and for several years such taxes were paid by the plaintiffs. These moneys will be lost if the sale is set aside, and no equitable ground has been suggested for such action.

*By the Court,* SUTHERLAND, J. I find no reasonable ground for saying that the referee's findings of fact were not authorized by the evidence, or that his findings of fact did not authorize his conclusion of law.

If King & Brush, the original purchasers at the auction sale, omitted to tender payment on the 1st of May, 1852, of the 15 per cent, and their bond and mortgage for the 75 per cent of the purchase money, their fault or default in not doing so, must be deemed to have been waived by the defendants; for I cannot doubt that the defendants were bound by the arrangement which the plaintiffs made with the comptroller, in December following, as to the execution and delivery of the deed to the plaintiffs as the assignees of King & Brush. Relying on this arrangement, the plaintiffs paid King & Brush the ten per cent and the auctioneer's fees.

The delay which subsequently took place, until in August, 1858, when the plaintiffs tendered the full amount of the purchase money unpaid, with interest, the referee found took place by mutual consent of the parties, from time to time, and was not the fault of the plaintiffs. This finding is abundantly supported by the evidence, if the

defendants should be considered as bound by the action of the comptroller or comptrollers in the matter.

I do not see upon what ground it can be reasonably claimed that the defendants were not bound by the action of the comptroller or comptrollers in the matter of postponing the delivery of the deed.

I think the statute of limitations did not commence running until the refusal of the comptroller to deliver the deed, in August, 1858.

I think the judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, January 4, 1869. *Clerke, Sutherland* and *Geo. G. Barnard*, Justices.]